# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARIS CARTER, | ) | |
| | ) | Civil Action No. 11-cv-00825 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM P. MULLEN, SHERIFF | ) | District Judge Cercone |
| OF ALLEGHENY COUNTY, DEPUTY | ) | Chief Magistrate Judge Lenihan |
| SHERIFF JAMES RAINEY, DEPUTY | ) | |
| SHERIFF RYAN FOSTER, JESSE | ) | |
| ENGRAM, and ALLEGHENY COUNTY, | ) | |
| | ) | ECF Nos. 43, 48 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motions for Summary Judgment filed by Defendants at ECF Nos. 43 & 48 be granted.

### II. REPORT

Plaintiff Paris Carter files the above captioned case pursuant to 42 U.S.C. § 1983 for injuries sustained when he was placed in the central holding cell, or bullpen, at the Allegheny County courthouse. Plaintiff was beaten unconscious by another detainee being held in the bullpen, Defendant Jesse Engram.

A. Relevant Facts

Unless otherwise indicated, the following facts are undisputed and taken from the parties' Concise Statements of Material Facts and Responses thereto at ECF Nos. 44, 57, 59, and 60.

On July 14, 2011, Plaintiff Paris Carter ("Plaintiff" or "Carter") filed his initial Complaint against Allegheny County ("the County") and the Allegheny County Sheriff William P. Mullen ("Sheriff Mullen").[1] Plaintiff subsequently amended his Complaint, adding Allegheny County Sheriff Deputies Ryan Foster ("Deputy Foster") and James Rainey ("Deputy Rainey") (collectively "Defendants"), claiming constitutional violations pursuant to 42 U.S.C. § 1983, the Pennsylvania Constitution, and various state tort claims. (ECF No. 26.) Plaintiff also added claims against Jesse Engram ("Defendant Engram") for battery and other state tort claims, § 1983 claims, and violations of the Pennsylvania Constitution. (ECF No. 26.) Although Defendant Engram was served with the Second Amended Complaint, he has filed no responsive pleading nor entered his appearance in the above captioned case.

Initially, Plaintiff was lodged in the Northeast Ohio Correctional Center ("NEOCC"), pending adjudication on a federal charge. (ECF Nos. 44 & 57 at ¶ 22.) No co-conspirators or co-defendants were charged with Plaintiff. (ECF Nos. 44 & 57 at ¶ 23.) Plaintiff was scheduled to appear for a bench trial before Judge Machen of the Allegheny County Court of Common Pleas on October 25, 2010 on a state criminal charge. (ECF Nos. 44 & 57 at ¶¶ 27-28.) Plaintiff pled guilty and was sentenced on October 26, 2010 to a firearms charge; all other charges were withdrawn. (ECF Nos. 44 & 57 at ¶ 29.)

The Allegheny County Sheriff's Deputies transported Plaintiff from NEOCC to Allegheny County on October 25, 2010. (ECF Nos. 44 & 57 at ¶ 31.) Carter arrived around

---

[1] Plaintiff, initially, incorrectly identified the Allegheny County Sheriff as William P. Miller. Plaintiff, however, correctly identified him in Plaintiff's Amended Complaint at ECF No. 6.

9:00 a.m. and was taken out of the van, placed in a holding cell with no handcuffs or shackles, and then sent across "the little bridge" to the courthouse with shackles and cuffs. (ECF Nos. 44 & 57 at ¶ 37.) The first holding cell contained few others, but after he crossed the walkway and was placed in the bullpen, Plaintiff was accompanied by approximately 15-20 other inmates. (ECF Nos. 44 & 57 at ¶ 38.) The bridge separated the buildings, and once across, Plaintiff saw a cage on the right side, a desk on the left, steps going up to the courtroom and the door to the bullpen on the left. (ECF Nos. 44 & 57 at ¶ 39.)

Plaintiff entered the bullpen through a double door. (ECF Nos. 44 & 57 at ¶ 47.) In the bullpen, Plaintiff's handcuffs were removed, but his shackles remained. (ECF Nos. 44 & 57 at ¶ 40.) Plaintiff came around the entry to the left and stood and leaned against the bars near the entry. (ECF Nos. 44 & 57 at ¶ 51.) When Plaintiff was standing against the bars adjacent to the entry doors, he heard something, turned around, and was struck in the eye. (ECF Nos. 44 & 57 at ¶ 58.) Plaintiff recalls grabbing something, but was beaten until he lost consciousness. The next thing Plaintiff recalls is the sheriff grabbing him and asking if he was alright; Plaintiff avers that he woke up soon after losing consciousness. (ECF Nos. 44 & 57 at ¶ 61.) Plaintiff did not see who hit him. (ECF Nos. 44 & 57 at ¶ 62.) He does not know how many times he was hit and assumes that because he had bruises, he was hit multiple times. (ECF Nos. 44 & 57 at ¶ 63.) Plaintiff indicated that he suffered a contusion of the left foot, a broken wrist, and bruises on his back. (ECF Nos. 44 & 57 at ¶ 66.)

The deputy sheriff assisted Plaintiff out of the cell, although Plaintiff does not recall whether he was raised to a standing position in making his way out of the cell. (ECF Nos. 44 & 57 at ¶ 70.) The deputy asked if he was alright, gave him a tissue, asked Plaintiff questions, and whether he needed medical assistance. (ECF Nos. 44 & 57 at ¶ 71.) Plaintiff declined treatment

but the deputy sheriff said he wanted Plaintiff to be examined. (ECF Nos. 44 & 57 at ¶ 72.) Plaintiff was walked back across the bridge to the holding cells where he was examined by medical personnel who applied a splint to his arm. (ECF Nos. 44 & 57 at ¶¶ 73-74.) The Allegheny County Sheriff's Office treated Plaintiff in the bullpen and, despite his refusal of medical attention, contacted EMS and escorted him with EMS transport to Mercy Hospital at approximately 1:00 p.m. where he was treated. (ECF Nos. 44 & 57 at ¶¶ 98 & 99.)

Plaintiff testified that he did not name Jesse Engram in the lawsuit, and that he does not know him. (ECF Nos. 44 & 57 at ¶ 82.) In fact, counsel for Plaintiff indicated that Jesse Engram was named as a defendant based upon the Sheriff's investigation. (ECF Nos. 44 & 57 at ¶ 83.)

Plaintiff did not tell anyone before the event that he was concerned about being placed in the general population of the holding cells. (ECF Nos. 44 & 57 at ¶ 85.) He did not perceive any "bad vibes," animosity, or problems with anyone in the holding cell. (ECF Nos. 44 & 57 at ¶ 86.) Plaintiff did not inform any deputies that he encountered in the transport van, on the walkway over the bridge from the sally port to the courthouse, or in the holding cell area, that he may be at risk for assault. (ECF Nos. 44 & 57 at ¶ 87.) Further, Plaintiff testified that he has no evidence that anyone at the sheriff's office would have known that he was at risk for assault. (ECF Nos. 44 & 57 at ¶ 91.) Further, Plaintiff was not affiliated with a gang, and he told no one at NEOCC that there was anyone in Pittsburgh who posed a threat to him. (ECF Nos. 44 & 57 at ¶¶ 94-95.)

B. Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. *Id*. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

C. Analysis

## SECTION 1983

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

1. **Defendants Sheriff Mullen, Deputy Rainey, and Deputy Foster**

   Eighth and Fourteenth Amendment claims

   The parties agree that Plaintiff was a pretrial detainee at the time of the alleged beating by Defendant Engram. (ECF No. 47 at 4; ECF No. 53 at 3.) Consequently, the Court relies on the

Fourteenth Amendment in analyzing Plaintiff's claims against Defendants. *Hubbard v. Taylor,* 399 F.3d 150, 166-67 & n. 23 (3d Cir. 2005); *King v. County of Gloucester,* 302 F. App'x 92, 96 (3d Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983); *Hubbard,* 399 F.3d at 166). "The applicable constitutional protection is the Due Process Clause of the Fourteenth Amendment . . . because the failure to [apply due process principles] amounts to punishment without an adjudication of guilt. *See Hubbard[],* 399 F.3d at 166." *King,* 302 F. App'x at 96. The court of appeals in *King* continued as follows:

> In assessing the denial of medical care [or conditions of confinement] to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). That inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard: "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." *Natale* [*v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)] (quoting *City of Revere*, 463 U.S. at 244, 103 S. Ct. 2979); *see also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979) (holding that "at a minimum the 'deliberate indifference' standard of *Estelle v. Gamble,* must be met").

*Id.* In other words, when evaluating inadequate medical care/conditions of confinement claims by pretrial detainees, courts must apply the Eighth Amendment's deliberate indifference standard as articulated by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97 (1976), but must view this inquiry in the context of the standard articulated in *Bell v. Wolfish*, which applies Fourteenth Amendment due process principles to pretrial detainees, rather than the cruel and unusual punishment standard. *Langella v. Cnty. of McKean,* Civ. A. No. 09-cv-311E, 2010 WL 3824222, at *13 (W.D. Pa. Sept. 23, 2010) (citing *Hubbard,* 399 F.3d at 165-66). *See also*

7

*Montgomery v. Ray,* 145 F. App'x 738, 739-40 (3d Cir. 2005) (vacating an order and remanding case where district court evaluated pretrial detainee's claim involving inadequate medical treatment under the same standards as Eighth Amendment claims). In *Montogmery,* the court of appeals noted its decision in *Hubbard,* which clarified the following:

> [T]he Eighth Amendment only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees. While "the due process rights of a [pre-trial detainee] are *at least* as great as the Eighth Amendment protections available to a convicted prisoner," *Hubbard,* 399 F.3d at 166 (citation omitted), the proper standard for examining such claims is the standard set forth in *Bell v. Wolfish,* . . . *i.e.,* whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt, *Hubbard,* 399 F.3d at 158.

145 F. App'x at 740 (emphasis and brackets in original).

In order to establish a claim on conditions of confinement, a plaintiff must show that he "suffered an objectively, sufficiently serious injury," and that "prison officials inflicted the injury with deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first prong of the *Farmer* test is an objective one, wherein a plaintiff must show that he has been incarcerated under conditions posing a substantial risk of harm. *Id.* The second prong is a subjective one, requiring a plaintiff to show that defendant acted with deliberate indifference. In *Farmer*, the United States Supreme Court clarified its meaning of the term "deliberate indifference" and held as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38.

Here, Plaintiff has come forward with no evidence to raise an inference that any of the individual Defendants actually knew that placing Plaintiff in the bullpen would expose him to danger. First, as to Deputy Rainey, undisputed record evidence reveals that he did not come into contact with the Plaintiff until after Plaintiff was attacked by Engram. Consequently, he cannot be held accountable under any § 1983 theory of liability for Plaintiff's injuries. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[D]efendant in a civil rights action must have personal involvement in the alleged wrongs . . . ."). Plaintiff has come forward with no evidence to show otherwise. In fact, Plaintiff testified that he did not know why Rainey was named as a defendant. (ECF No. 45-1 at 24.)

Next, Plaintiff has come forward with no evidence to raise an issue of material fact that Deputy Foster or Sheriff Mullen knew that placing Plaintiff in the bullpen would expose him to danger. As noted above, the parties agree that Plaintiff did not tell anyone before the beating that he was concerned about being placed in the general population of the holding cells. (ECF Nos. 44 & 57 at ¶ 85.) He did not inform any deputies that he encountered in the transport van, on the walkway over the bridge from the sally port to the courthouse, or in the holding cell area, that he may be at risk for assault. (ECF Nos. 44 & 57 at ¶ 87.) Plaintiff admitted that no one at the sheriff's office would have known that he was at risk for assault. (ECF Nos. 44 & 57 at ¶ 91.) Plaintiff was not affiliated with a gang, no co-conspirators or co-defendants were charged with him, and he told no one at NEOCC that there was anyone in Pittsburgh who posed a threat to him. (ECF Nos. 44 & 57 at ¶¶ 23, 94-95.) Record evidence reflects, and Plaintiff has come forward with no specific facts to raise a genuine issue for trial, that the sheriff's office has a standard office operating procedure to separate detainees when it receives information of

potential conflicts due to the detainees' status as co-defendants, co-conspirators, witnesses, or antagonistic relations in rival gangs or organizations. (Affidavit of Deputy Foster, ECF No. 48-2 at 3 ¶¶ 5 & 7; Affidavit of Sheriff Mullen, ECF No. 48-1 at 3 ¶ 5; Affidavit of Douglas Clark, ECF No. 48-3 at 3 ¶¶ 5-7.)

Plaintiff argues that Defendants should have known that placing him in the bullpen with violent state prisoners exposed him to danger because he was a federal prisoner with no violent propensities. He emphasizes that the Sheriff had a policy of not separating male inmates by any classification of offense, and that there is simply no logical basis not to separate violent prisoners from non-violent prisoners. (ECF No. 53 at 4-6.) The United States Court of Appeals for the Third Circuit has specifically stated, however, that because the deliberate indifference standard is based on subjective, not objective knowledge, "it is not sufficient that the official *should* have been aware [of the danger]." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837-38) (emphasis added). The court of appeals in *Beers-Capitol* continued that subjective knowledge "can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* (citing *Farmer*, 511 U.S. at 842). Here, apart from arguing that it is illogical not to separate violent inmates from non-violent inmates, Plaintiff has come forward with no evidence to raise a disputed issue of material fact that the danger was so obvious that Deputy Foster or Sheriff Mullen must have known of the risk. To the contrary, Deputy Foster specifically indicated in his Affidavit that since he was hired in January of 2006 until the attack in issue on October 25, 2010, he "had observed no incidence of physical violence between inmates within the holding cell at the Allegheny County Courthouse." (ECF No. 48-2 at 6, ¶ 24.) Likewise, Sheriff Mullen indicated in his Affidavit that "[p]rior to October 25, 2010, there have been no incidents of violence

between inmates within the holding cell at the Allegheny County Courthouse." (ECF No. 48-1 at 5, ¶ 25.) Hence, record evidence does not support Plaintiff's argument that the danger of not separating violent from non-violent inmates was so obvious that Deputy Foster and/or Sheriff Mullen must have known of the risk.

Further, Plaintiff has come forward with no specific facts to raise an inference that Sheriff Mullen personally participated in the circumstances that gave rise to Plaintiff's injuries; Sheriff Mullen's liability may not be premised solely on the operation of respondeat superior. *Rode*, 845 F.2d at 1207. This personal involvement may be shown through particular facts showing personal direction or actual knowledge and acquiescence. *Id.* Plaintiff has failed to come forward with specific facts as to such personal involvement. Hence, no reasonable jury could conclude that Sheriff Mullen could be found liable for personally violating Plaintiff's civil rights.[2]

In an effort to be comprehensive, and assuming that the Court would afford Plaintiff the most liberal construction of the Second Amended Complaint, Defendants also move for summary judgment on a state created danger theory.[3] In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the state to protect citizens from the acts of private persons. *Id*. at 198-200. In *DeShaney*, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's

---

[2] To the extent that Plaintiff attempts to argue the municipal liability theories of failure to train and/or failure to supervise as to Sheriff Mullen, these theories must fail in the absence of an underlying constitutional violation. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989).
[3] Plaintiff's Second Amendment Complaint includes an averment that "Plaintiff was placed in a state created danger by being placed in the bullpen of the Allegheny County Courthouse." (ECF No. 26 at ¶ 35.)

11

custody and was so badly beaten that the boy suffered severe brain damage. *Id*. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id*. at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the state created danger theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id*. at 201. The United States Supreme Court emphasized that the substantive component of the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." *Id*. at 195. The *DeShaney* court continued that historically, the purpose of substantive due process "was to protect the people from the State, not to ensure that the State protected them from each other." *Id*. at 196.

In *Kneipp*, the United States Court of Appeals for the Third Circuit relied on the language in *DeShaney* to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a state created danger theory where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them. *Kneipp*, 95 F.3d at 1205, 1211. In order to prevail on a state created danger claim, a plaintiff must prove the following:

12

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)).

Here, Plaintiff has come forward with no evidence to raise a disputed issue of material fact as to whether Engram's attack was foreseeable. In fact, as noted above, Sheriff Mullen indicated that "[p]rior to October 25, 2010, there have been no incidents of violence between inmates within the holding cell at the Allegheny County Courthouse." (ECF No. 48-1 at 5, ¶ 25.) Likewise, Deputy Foster indicated that he "had observed no incidence of physical violence between inmates within the holding cell" before the attack on Plaintiff. (ECF No. 48-2 at 6, ¶ 24.)

Further, Plaintiff comes forward with no specific facts to raise an inference that a state actor acted with a degree of culpability that shocks the conscience. In *Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit discussed the second element of the state created danger analysis. The court noted that whether a state actor acts with a degree of culpability that shocks the conscience "depends largely on the circumstances of the case." *Id.* at 240. In discussing its then recent case of *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006), the *Phillips* court elaborated as follows:

13

> The time in which the government actors had to respond to an incident is of particular significance. For example, in *Sanford*, we stated that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." [*Sanford*, 456 F.3d] at 306. We then concluded that although *intent* to cause harm must be found in a "hyperpressurized environment," where officials are afforded the luxury of a greater degree of deliberation and have time to make "unhurried judgments," *deliberate indifference* is sufficient to support an allegation of culpability. *Id.* We further noted "the possibility that deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *Id.* Finally, where the circumstances require a state actor to make something less exigent than a "split-second" decision but more urgent than an "unhurried judgment," i.e., a state actor is required to act "in a matter of hours or minutes," a court must consider whether a defendant disregarded a "great risk of serious harm rather than a substantial risk." *Id.*

*Phillips*, 515 F.3d at 240-41 (emphasis in original).

The undisputed facts here indicate that Defendants were not acting in a "hyperpressurized environment." They had sufficient time to proceed deliberately with regard to delivering detainees to the bullpen. That is, they were not acting in a hyperpressurized environment but had the luxury of time to develop appropriate procedures for transporting numerous detainees and convicted prisoners for scheduled court appearances. Consequently, in order for Defendants' conduct to "shock the conscience" under the facts and circumstances here, their behavior must reflect deliberate indifference to a substantial risk of serious harm. As discussed in detail above, Plaintiff has failed to come forward with specific facts to raise an inference that Defendants were deliberately indifferent.

Plaintiff attempts to create a disputed issue of material fact with his Declaration submitted on summary judgment. (ECF No. 57-1 at 24-25.) Specifically, Plaintiff states that he "was required to wait an agonizing twenty-five (25) minutes before Deputy Sheriffs came into the cell." (ECF No. 57-1 at ¶ 10.) Defendants argue that with the statement, Plaintiff is

14

attempting to create a disputed issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's health and safety, relying on the contentions in Plaintiff's Brief in Opposition to Motion for Summary Judgment at ECF No. 53 at 5. Defendants argue that the Sham Affidavit doctrine prohibits Plaintiff from using an affidavit in this way for purposes of defeating a motion for summary judgment. Specifically, Defendants direct the Court to Plaintiff's deposition testimony where he testified that he remembered being pulled up, and the deputy asking him whether he was alright, and indicating to Plaintiff that he had been knocked out. (ECF No. 45-1 at 18.) Plaintiff further testified that he recalls being hit, and then waking up with the deputy/sheriff on top of him. (ECF No. 45-1 at 15.) Plaintiff also testified that he remembers that the deputy asked if he wanted medical assistance and responding that he didn't think he needed medical assistance. Plaintiff testified that he was sore, had a little lump, and at that point, wasn't sure he needed medical assistance. (ECF No. 45-1 at 18.) Plaintiff has never indicated, other than in his Declaration, that there was any interval of time where he was conscious and waiting in his cell for an official to arrive while suffering in agonizing pain.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c) further provides that "[a]n affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

15

Plaintiff, however, cannot submit an affidavit which contradicts his own testimony at his deposition in order to create a material issue of fact to defeat a summary judgment motion. That is, pursuant to the Sham Affidavit Doctrine, a district court may disregard an offsetting affidavit submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony without explaining the contradiction. *In re CitX Corp., Inc.,* 448 F.3d 672, 679 (3d Cir. 2006) (citing *Baer v. Chase,* 392 F.3d 609, 623-24 (3d Cir. 2004)). A district court is not required to disregard the affidavit in all cases merely because there is a discrepancy between the affidavit and the prior deposition testimony. *Baer,* 392 F.3d at 624 (citations omitted). If the plaintiff provides a legitimate reason for the inconsistency, such as "'[w]here the witness was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material issue of fact.'" *Id.* at 625 (quoting *Martin v. Merrell Dow Pharm., Inc.,* 851 F.2d 703, 705 (3d Cir. 1998)). Also, courts have generally refused to disregard the affidavit where independent evidence exists in the record to bolster an otherwise questionable affidavit. *Id.* (citing *Bushnell v. Wackenhut Int'l, Inc.,* 731 F. Supp. 1574, 1578 (S.D. Fla. 1990) (deposition testimony of third party can provide corroborating evidence as to substance of subsequent affidavit); *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 43-44 (2d Cir. 2000) (documentary evidence introduced to support contradictory statements in subsequent affidavit); *Delaney v. Deere & Co.,* 219 F.3d 1195, 1196 n.1 (10th Cir. 2000) (good faith basis for inconsistency may be established by new evidence)).

In the present case, Plaintiff offers no explanation for the inconsistency between his prior deposition testimony and his subsequent Declaration as required by the Third Circuit in *Baer*. Plaintiff fails to show that there was some confusion regarding his prior testimony or that he

16

misspoke. Nor does he point to any corroborating evidence that would lend credence to his self-serving statement. In fact, Plaintiff simply ignores the inconsistency in his submissions to the Court. Thus, to the extent the statement contained in paragraph 10 of his Declaration contradicts or is inconsistent with his prior deposition testimony, the Court should disregard this statement.

Hence, Plaintiff has come forward with no evidence to raise a disputed issue of material fact as to whether the Defendants were deliberately indifferent to Plaintiff's safety. Therefore, Plaintiff's conditions of confinement did not amount to punishment prior to adjudication of guilt in violation of the Fourteenth Amendment. Consequently, Defendants are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983. Further, Plaintiff's Eighth Amendment claim must be dismissed with prejudice as he was a pretrial detainee at the time of the events in issue. Plaintiff appears to abandon his Fourth[4] and Thirteenth Amendment claims[5], and consequently, these claims must be dismissed with prejudice. Finally, Plaintiff also appears to abandon any Fourteenth Amendment claim of equal protection.[6] (ECF No. 47 at 5; ECF No. 53 at 2-6.)

---

[4] Plaintiff offers no response to Defendants' arguments as to why the Fourth Amendment is not in play. *See* ECF No. 47 at 13-14.
[5] Plaintiff's Thirteenth Amendment claim also fails as a matter of law. Although the primary purpose of the amendment was to abolish the institution of African slavery, it was also intended to protect against "involuntary servitude." That is, it was intended to cover those forms of forced labor analogous to African slavery. *United States v. Kozminski*, 487 U.S. 931, 942 (1988). *See Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 998 (3d Cir. 1993), *abrogated on other grounds by, Troster v. Pennsylvania State Dep't Corrs.*, 65 F.3d 1086, 1090 (3d Cir. 1995). Here, Plaintiff's claims are devoid of any allegations of forced labor.
[6] In his Second Amended Complaint, Plaintiff avers that he was deprived of his rights to equal protection "not to have the laws enforced in a selective fashion against her [sic]." (ECF No. 26 at ¶ 42.) The facts of this case do not suggest that the named Defendants were charged with enforcing the laws against the Plaintiff.

Qualified Immunity

Because Plaintiff has failed to raise an issue of material fact as to whether Sheriff Mullen and Deputies Rainey and Foster violated Plaintiff's constitutional rights, the Court need not discuss the issue of qualified immunity.

2. **Defendant Allegheny County**

Municipal Liability

Defendant Allegheny County cannot be liable for municipal liability pursuant to § 1983 unless one of its employees violated Plaintiff's constitutional rights. Because there is no underlying § 1983 liability as to Sheriff Mullen and Deputies Rainey and Foster, there can be no municipal liability against Allegheny County. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989). Hence, Defendant Allegheny County is entitled to judgment as a matter of law. Therefore, it is respectfully recommended that the Motion for Summary Judgment filed by Allegheny County at ECF No. 48 be granted.

## STATE LAW CLAIMS

Plaintiff also brings claims against Defendant Engram, Sheriff Mullen, Deputies Rainey and Foster, and Allegheny County pursuant to the Pennsylvania Constitution, and for assault and battery, intentional infliction of emotional distress, negligence, gross negligence, negligent hiring, training, supervision, and retention under Pennsylvania state law. Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Supplemental jurisdiction may be declined, however, when the court has dismissed all claims

over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c) (3). In light of the fact that summary judgment should be granted in favor of the Defendants on all of Plaintiff's § 1983 claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. It is respectfully recommended that the state law claims be dismissed without prejudice to refiling the claims in state court.[7]

### III. CONCLUSION

For the above reasons, it is respectfully recommended that the Motions for Summary Judgment filed by Defendants at ECF Nos. 43 & 48 be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

August 12, 2013

                                                         **BY THE COURT:**

                                                         LISA PUPO LENIHAN
                                                         Chief United States Magistrate Judge

cc:    All Counsel of Record
        Via Electronic Filing

---

[7] The dismissal of the state law claims without prejudice should not work to Plaintiff's disadvantage in that 28 U.S.C. § 1367(d) provides for at least a 30-day tolling of any applicable statute of limitation so as to allow a plaintiff to refile state law claims in state court.